**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RAUL SAUCEDO-CERVANTE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KEVIN CHILDERS, SUSAN WALKER,<br>and SHERRY BENTON,<br><br>　　　　Defendants. | Case No. 3:18-CV-1112-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendant Kevin Childers (Doc. 40) and the Motion for Summary Judgment filed by Defendants Sherry Benton and Susan Walker (Doc. 42). For the reasons set forth below, the motions are granted.

## PROCEDURAL HISTORY

Plaintiff Raul Saucedo-Cervante is an inmate in the Illinois Department of Corrections (IDOC) currently housed at Centralia Correctional Center. On May 14, 2018, Saucedo-Cervante filed this action seeking damages for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 1). After the Court's threshold review of his Complaint pursuant to 28 U.S.C. § 1915A, Saucedo-Cervante is proceeding on one count of deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendant Dr. Kevin Childers, an optometrist, Defendant Susan Walker, a Grievance Officer at Centralia, and Defendant Sherry Benton, Chairperson of the Administrative Review Board (ARB) (Doc. 7).

On November 8, 2019, Dr. Childers filed a Motion for Summary Judgment (Doc. 40),

and on November 12, 2019, Walker and Benton filed a separate Motion for Summary Judgment (Doc. 42). Saucedo-Cervante responded to both motions (Docs. 45, 49), and on December 23, 2019, Dr. Childers filed a reply brief (Doc. 50).

**FACTUAL BACKGROUND**

The following material facts are undisputed for purposes of summary judgment. In August 2016, while housed at Danville Correctional Center, Saucedo-Cervante woke up with pain and redness in his left eye (Doc. 41-1 at p. 24). He also reported that his eye was watering and itching (Doc. 41-2 at p. 8).

Saucedo-Cervante submitted an emergency grievance related to his left eye issues on September 12, 2016, stating that he had been to the Healthcare Unit six times for his eye issues, and each time he received a different diagnosis (Doc. 49-1 at p. 19). As relief, he requested a test to determine what was actually wrong with his eye and treatment for the problem (*Id.*). The Grievance Officer reviewed the grievance on September 22, 2016, and determined, after consulting with the Healthcare Unit, that Saucedo-Cervante was on the list to be seen by the eye doctor (*Id.*). Thus, the Grievance Officer recommended the grievance be denied as moot (*Id.*).

On September 29, 2016, Saucedo-Cervante was treated by an optometrist, Dr. Brummel, for his left eye issues (Doc. 41-2 at p. 62). Dr. Brummel noted some swelling in the left eye, diagnosed Saucedo-Cervante with episcleritis, and prescribed Pred Forte steroid eye drops for one week (*Id.*). Episcleritis is a benign inflammatory process that can go away on its own over time and may cause some redness and irritation (Doc. 41-3 at ¶ 4). A month later, Dr. Brummel additionally ordered artificial tears, an over-the-counter eye drop (*Id.* at

p. 65). Saucedo-Cervante testified that the redness went away after using the drops (Doc. 41-1 at p. 29).

On October 11, 2016, Saucedo-Cervante appealed the denial of his September 12, 2016 grievance (*Id.* at p. 12). Defendant Benton denied the appeal because, she found, the issue was appropriately addressed by the prison (*Id.*). Benton further directed Saucedo-Cervante to follow up with the Healthcare Unit as needed (*Id.*).

In March 2017, Saucedo-Cervante was transferred to Centralia Correctional Center. He did not report any issues with his left eye until January 2018, when he complained of redness, itching, burning, blurred vision, and throbbing pain (Doc. 45-2 at p. 41). Saucedo-Cervante was seen by a medical doctor at Centralia on January 27, 2018, who diagnosed him with conjunctivitis, ordered anti-infective, steroid combination eye drops for one week, and referred him to the optometrist (Doc. 41-2 at p. 41).

On February 5, 2018, Saucedo-Cervante filed a grievance stating that he had been suffering from "redness, soreness, blurred vision and pain for about two weeks now." (*Id.* at p. 5). While he had seen a doctor, who said he would put Saucedo-Cervante in to see a specialist, Saucedo-Cervante complained that he had yet to see the specialist (*Id.*). As relief, Saucedo-Cervante stated: "I want the situation with my eye taken seriously and taken care of." (*Id.* at p. 5).

On February 7, 2018, Dr. Childers examined Saucedo-Cervante (*Id.* at p. 68). Saucedo-Cervante complained that his left eye had been red, itchy, watery, and blurry for approximately two years (*Id.*). He also requested that Dr. Childers give him more ibuprofen or Tylenol as well as more eye drops (Doc. 45-3 at pp. 33-34). Saucedo-Cervante testified that Dr. Childers, who may have been joking around, told him "that's why God gave you two

eyes, if one turns off, you have the other one." (*Id.* at p. 33). Dr. Childers diagnosed Saucedo-Cervante with conjunctivitis caused by allergies and ordered Naphcon-A, an over-the-counter eye drop, to treat his condition and alleviate his symptoms (Doc 41-3). Dr. Childers attested that conjunctivitis is inflammation of the outer membrane of the eye usually caused by a bacterial infection or an allergic reaction (*Id.*). While conjunctivitis can resolve on its own, it sometimes requires antibacterial or steroidal eye drops (*Id.*). This is the only time that Dr. Childers saw Saucedo-Cervante (Doc. 41-3).

Saucedo-Cervante immediately filed an emergency grievance subsequent to his examination by Dr. Childers (*Id.* at p. 7). In his February 7, 2018 grievance, Saucedo-Cervante stated that he met with the eye doctor to be examined concerning his extreme pain and loss of vision in his left eye (*Id.*). After performing an examination, Dr. Childers told Saucedo-Cervante he had a weak eye and that's why God gave him two eyes (*Id.*). Dr. Childers then prescribed Tylenol and eye drops, despite Saucedo-Cervante informing him he had been on eye drops for two years with no relief (*Id.*).

According to Saucedo-Cervante, the eye drops prescribed by Dr. Childers would help for one or two hours, then his eye would turn red again (Doc. 45-3 at p. 35). Dr. Childers attested, however, that he was never informed that Saucedo-Cervante's symptoms persisted or that the eye drops he prescribed were not effective (Doc. 41-3). Dr. Childers also attested that, based on his education, experience, and training, Saucedo-Cervante's left eye condition on February 7, 2018, was not a serious medical need (*Id.*).

Saucedo-Cervante requested to see Dr. Childers again, but he was seen by the Medical Director of Centralia, Dr. Santos, instead (*Id.*). Saucedo-Cervante asked Dr. Santos to renew the prescription for the Naphcon-A eye drops first ordered by Dr. Childers (*Id.* at pp. 35-36).

On March 1, 2018, Defendant Walker reviewed the February 7, 2018 grievance and determined that Saucedo-Cervante's medical concerns were being addressed by the facility's health care staff and that only qualified medical staff can determine medical care (Doc. 49-1 at p. 4). Accordingly, she recommended the grievance be denied (*Id.*). The warden concurred in the decision to deny the grievance, and on March 14, 2018, Saucedo-Cervante appealed the warden's decision to the ARB (*Id.*). Defendant Benton denied Saucedo-Cervante's appeal of both the February 5 and February 7, 2018 grievances, finding that his left eye issue was appropriately addressed by the facility (*Id.* at p. 3). Benton further noted that medical treatment is at the discretion of the doctor, and Saucedo-Cervante should follow-up as needed (*Id.*).

Saucedo-Cervante testified that his vision problems continued to worsen following the submission of these grievances. During an examination on July 8, 2018, Saucedo-Cervante reported only being able to see a white shadow out of his left eye (Doc. 49-2 at p. 59). On September 18, 2018, he indicated he could not see out of his left eye because it was blurry (*Id.* at p. 114). As of March 21, 2019, Saucedo-Cervante was still using the Naphcon-A drops initially ordered by Dr. Childers (Doc. 49-2 at p. 163).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute;

any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (citation omitted).

## Discussion

### I. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment prohibits cruel and unusual punishments, and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)).

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if " 'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593

F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

II.    **Objectively Serious Medical Condition**

Defendants first argue that Saucedo-Cervante has failed to demonstrate he suffered from an objectively serious medical condition. Dr. Childers argues that on February 7, 2018, the only time he saw Saucedo-Cervante, he diagnosed Saucedo-Cervante with conjunctivitis caused by allergies and ordered over-the-counter eye drops to alleviate the symptoms. Dr. Childers asserts that a condition that only necessitates over-the-counter medication is not sufficient to establish a serious medical need. And, although Saucedo-Cervante reported that his left eye had been red, watery, and itchy for two years, this was the first time he

complained about it in over a year. Dr. Childers attests that, based on his education, experience, and training, Saucedo-Cervante's left eye condition was not a serious medical need on February 7, 2018.

Walker and Benton additionally argue that Saucedo-Cervante admitted the eye drops that Dr. Childers gave him worked for a couple of hours at a time and that an objective lay person would not be able to conclude that his condition required medical attention. Saucedo-Cervante continued to work at his job in the kitchen at Centralia and as a porter in the housing unit. This, combined with his lack of outward physical signs of injury, means his condition would not have been obvious to an objective party like Defendants Walker or Benton. Furthermore, while Saucedo-Cervante has subjectively reported issues with his vision, there is no medical proof his vision is too blurry to see.

The Court questions Defendants' assessment of the seriousness of Saucedo-Cervante's medical needs. Although Dr. Childers attested that Saucedo-Cervante's left eye condition was not a serious medical need as of February 7, 2018, Saucedo-Cervante reported he had symptoms including pain, burning, itching, watering, redness, sensitivity to light, and blurred vision in his left eye for more than two years. Even a lay person would assume that these symptoms, for that amount of time, would require some form of medical treatment and could be indicative of a more serious problem.

Furthermore, while Dr. Childers asserts that a condition requiring only over-the-counter medication cannot be an objectively serious medical condition, the cases he cites are inapposite. For example, in *Olson*, the plaintiff had a broken tooth that caused him severe pain and left him unable to sleep or eat until it was removed. *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). His first request for care, however, was only a request for aspirin. *Id.* The

Seventh Circuit held that a reasonable official would not have interpreted the plaintiff's request for aspirin as an indicator of a serious medical need. *Id.* at 713-14. In this case, however, Saucedo-Cervante did not request an over-the-counter eye drop or downplay the severity of his symptoms such that a reasonable official would not have realized he had a serious medical need. And the Seventh Circuit certainly did not create a bright-line rule in *Olson*, as Dr. Childers suggests, that a condition requiring only over-the-counter medication cannot be objectively serious.

Viewing the evidence in the light most favorable to the non-movant, the Court finds that Saucedo-Cervante has demonstrated he suffered from an objectively serious medical need.

### III.  Deliberate Indifference to the Serious Medical Need

Defendants next argue that, even if Saucedo-Cervante's eye condition was an objectively serious medical need, they were not deliberately indifferent to it.

#### A.  <u>Defendant Dr. Childers</u>

The evidence in the summary judgment record demonstrates that Saucedo-Cervante arrived at Centralia in March 2017. He did not make any medical request related to his left eye until late January 2018, when he reported that the artificial tears initially prescribed by Dr. Brummel at Danville were no longer working. Saucedo-Cervante first saw a medical doctor, who diagnosed him with conjunctivitis and referred him to the optometrist. Dr. Childers, a Doctor of Optometry, then saw Saucedo-Cervante one time. At that examination, Dr. Childers examined Saucedo-Cervante, diagnosed him with allergic conjunctivitis, and ordered Naphcon-A because it can help alleviate redness, irritation, and pain. Saucedo-Cervante admitted the Naphcon-A helped alleviate his symptoms, and, when asked what Dr.

Childers should have done differently, Saucedo-Cervante responded, "Honestly, I don't know." (Doc. 42-1 at p. 12). In fact, Saucedo-Cervante continued to request refills of Naphcon-A even after the filing of this lawsuit (Doc. 41-4 at p. 117).

Contrary to the argument made by Saucedo-Cervante, this is not a situation where a prison official persisted in a course of treatment known to be ineffective. *See Arnett*, 658 F.3d at 754 ("A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition."). Dr. Childers prescribed Naphcon-A—a different medication than the artificial tears prescribed by Dr. Brummel at Danville that were no longer effective. Furthermore, while Saucedo-Cervante wrote a grievance after his appointment with Dr. Childers, there is no evidence that Dr. Childers was aware of that grievance or the fact that Saucedo-Cervante was experiencing worsening symptoms.

Based on these facts, no reasonable jury would find that Dr. Childers intentionally or recklessly disregarded a risk to Saucedo-Cervante's health. Instead, the evidence indicates that Dr. Childers exercised his professional judgment in choosing what he believed to be the best course of treatment for the diagnosis of allergic conjunctivitis. On this record, the Court cannot say that Dr. Childers was deliberately indifferent to Saucedo-Cervante's medical needs.

    B.    <u>Defendants Walker and Benton</u>

Defendants Walker and Benton argue that, while they reviewed Saucedo-Cervante's grievances, they were not deliberately indifferent to his medical needs because nonmedical officials are entitled to defer to the judgment of prison health professionals, so long as they do not ignore the prisoner's complaints. *See King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012). They further argue that Saucedo-Cervante never personally spoke to them or made them aware

that he was in pain, or specifically asked either of them if he could see a medical technician. And even if they did not follow up to ensure Saucedo-Cervante received appropriate medical care, that failure constitutes, at most, negligence.

The Court agrees with Saucedo-Cervante that whether he ever personally spoke to Defendant Walker or Defendant Benton is completely irrelevant. It is well-established that "[a]n inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). If the prisoner's correspondence alerts an official to an excessive risk to the inmate's safety or health, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* (citation omitted). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Id.*

Here, however, the Court finds that neither Walker nor Benton disregarded an excessive risk to Saucedo-Cervante's health. Walker reviewed Saucedo-Cervante's February 5 and February 7, 2018 grievances and consulted with the Healthcare Unit Administrator to ensure his complaints did not require further action (Doc. 42-2). Per the Healthcare Unit Administrator, Saucedo-Cervante saw Dr. Childers the same day he wrote his February 7, 2018 grievance, was diagnosed with allegoric conjunctivitis, and was provided eye drops to address his condition (*Id.*). Based on this information, Walker attested, she concluded that his complaints were being addressed by the healthcare staff (*Id.*). As a non-medical administrator, Walker was entitled to the judgment of the prison's health professionals. *See, e.g., Arnett*, 658 F.3d at 755. And while Saucedo-Cervante complained in his February 7, 2018 grievance about Dr. Childers persisting in a course of treatment known to be inadequate, Dr.

Childers actually prescribed a new eye drop that Saucedo-Cervante had not yet tried. At most, Walker's failure to follow up with Saucedo-Cervante to determine whether his new eye drops were working could constitute negligence, but "negligence is not deliberate indifference." *Hayes*, 546 F.3d at 527. Because Walker did not intentionally or recklessly ignore Saucedo-Cervante's complaints, but rather followed up with the proper administrators to ensure no further action was necessary, the Court finds she was not deliberately indifferent.

The Court comes to the same conclusion with regard to Benton. Benton attested that she reviewed the relevant grievances and noted that Saucedo-Cervante had seen doctors for his left eye issues on January 26 and February 7, 2018, and was prescribed eye drops. Again, although Saucedo-Cervante complained on February 7, 2018, that Dr. Childers was persisting in a course of treatment known to be ineffective, the drops he prescribed were different than those previously used by Saucedo-Cervante. And while Benton also reviewed the appeal of Saucedo-Cervante's September 2016 grievance, indicating his condition had been continuing for nearly two years, that fact alone does not indicate he was mistreated by prison health professionals. On these facts, the Court cannot say that Benton turned a blind eye to Saucedo-Cervante's plight when she relied on the judgment of medical professionals in denying Saucedo-Cervante's grievances. Accordingly, the Court finds that Benton was not deliberately indifferent.

## Conclusion

Because Defendants were not deliberately indifferent to Plaintiff's serious medical needs, the Motion for Summary Judgment filed by Defendant Kevin Childers (Doc. 40) and the Motion for Summary Judgment filed by Defendants Sherry Benton and Susan Walker

(Doc. 42) are **GRANTED**. Plaintiff Raul Saucedo-Cervante shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:   July 2, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

(Doc. 42) are **GRANTED**. Plaintiff Raul Saucedo-Cervante shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:   July 2, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**